# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BEN KIMBRO and MARY KIMBRO, individually and as parents and next friends of their minor children, F.C.K and C.P.K., <br><br> Plaintiffs, <br><br> v. <br><br> DAVIS H. ELLIOT COMPANY, INC., <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 13-CV-208-TCK-TLW<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 27), wherein Defendant Davis H. Elliot Company, Inc. ("Elliot") moves the Court for summary judgment on all claims. Elliot failed to file a reply brief, and the motion is ripe for review. Also before the Court is Plaintiff's Motion in Limine (Doc. 33), wherein Plaintiffs seek to exclude evidence of payments made by their insurer and evidence suggesting that Plaintiffs are not the real parties in interest to the negligence claim. Elliot failed to respond to the motion in limine, and the motion is ripe for review.

**I.     Factual Background**

American Electric Power Service Corporation ("AEP"), as an agent for Public Service Company of Oklahoma, contracted with Elliot on November 13, 2006 "to perform underground facilities locating services" on an as-needed basis. Plaintiffs' home was located in a neighborhood in Tulsa, Oklahoma that was being converted from overhead lines to underground lines. Elliot performed services at Plaintiffs' home as part of the conversion process pursuant to its service contract with AEP. On December 9, 2007, while the conversion process was taking place in

Plaintiffs' neighborhood, a massive ice storm occurred in Tulsa. The storm caused power outages throughout the city and delayed the conversion process for Plaintiffs' neighborhood.

In this lawsuit, Plaintiffs contend that Elliot employees negligently performed electrical work in conjunction with the conversion process, which caused an ongoing electrical problem in their home. According to Plaintiffs, this electrical problem led to multiple fires at their home. In addition to committing negligence, Plaintiffs also allege that Elliot employees fraudulently concealed the electrical problem with knowledge that they were leaving the home in an unsafe condition.

In its motion for summary judgment, Elliot makes three arguments. First, Elliot argues that the summary judgment evidence conclusively demonstrates that Elliot did not complete work on Plaintiffs' home during the time frame when the alleged negligence occurred. This argument, which is essentially that Plaintiffs sued the wrong party, applies to both claims. Second, with respect to negligence, Elliot contends that Plaintiffs have not suffered damages because their insurance company paid their property damage claims in full. Finally, with respect to fraud, Elliot argues that the purported conduct by Elliot, even assuming it occurred, does not give rise to a fraud claim under Oklahoma law.

## II.     Discussion

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint

but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### A.     **Improper Defendant**

Plaintiff Mary Jo Kimbro ("Mrs. Kimbro") testified that, sometime after December 9, 2007, she escorted an Elliot employee into her home and showed him an electrical box in a guest bedroom closet. This is the location in the home where the allegedly negligent work was performed.[1] She testified that the crew consisted of more than two workers and that they wore yellow hard hats and safety vests. Mrs. Kimbro identified these workers as Elliot employees because they wore shirts with the Elliot logo and because a van with the Elliot logo was parked outside her house. Elliot contends that the following evidence refutes Mrs. Kimbro's recollection as a matter of law: (1) a "Spreadsheet of Work" purportedly showing that Elliot completed its work at Plaintiffs' home on December 5, 2007; (2) testimony by Matt Clark ("Clark"), an Elliot employee identified on the "Spreadsheet of Work" as having worked at Plaintiffs' home, that he worked only on the exterior of Plaintiffs' home; (3) Clark's testimony that he was never with more than one other crew member; (4) Clark's testimony that they wore white hard hats (not yellow); and (5) AEP records purportedly showing that AEP performed work on Plaintiffs' home on or around February 7, 2008.

Elliot is not entitled to summary judgment. Mrs. Kimbro's identification of the workers as Elliot employees is more than sufficient to create a question of fact. While Elliot's evidence could

---

[1] An ice storm occurred in Tulsa, Oklahoma, on December 9, 2007. Mrs. Kimbro testified that the allegedly negligent work was performed by a worker who entered her home sometime after the ice storm.

possibly serve to impeach Mrs. Kimbro's recollection, it does not conclusively establish that Mrs. Kimbro is incorrect or somehow prove that AEP performed the work. The "Spreadsheet of Work" simply shows a "conversion date" of November 29, 2007 and an "inspection requested" date of December 5, 2007. It does not prove that Elliot never returned to Plaintiffs' home after the ice storm. In fact, Plaintiffs have presented their own documentary evidence indicating that Elliot may have returned to Plaintiffs' home after December 5, 2007 (and therefore possibly after the ice storm). (*See* Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. (inspection report dated December 5, 2007, indicating that "home owner said job was not finished, contractor was coming back to do some work").) Contrary to Elliot's arguments, the documentary evidence does not wholly discredit Mrs. Kimbro's testimony. Further, any inconsistencies between Mrs. Kimbro's memory and Elliot's general practices – such as the color of hard hats worn or the number of crew members present – do not render Mrs. Kimbro's testimony unreliable as a matter of law. Mrs. Kimbro's certainty regarding the Elliot logo on shirts and vehicles could be deemed sufficient to overcome any other inaccurate details. Therefore, Plaintiffs' evidence is sufficient to reach a jury on the question of whether Elliot – or some other company – performed the allegedly negligent work.

### B.  Negligence

Elliot argues that Plaintiffs have not suffered any damages and/or are not the real parties in interest to the negligence claim because their insurance company fully compensated them for all property damage.

#### 1.  Damages

Under Oklahoma law, the measure of a tort victim's damages "is the amount which will compensate for all detriment proximately caused thereby." Okla. Stat. tit. 21, § 61. Pursuant to the

collateral source rule, the victim's damages may not be reduced for amounts paid by any collateral source, *i.e.*, a source other than the tortfeasor. *See Estrada v. Port City Props., Inc.*, 258 P.3d 495, 506 n.39 (Okla. 2011) ("It is well settled that damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partially indemnified for loss by insurance effected by the party and to the procurement of which the wrongdoer did not contribute."); *Denco Bus Lines v. Hargis*, 229 P.2d 560, 561 (Okla. 1951) ("[T]he receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person causing the injury."). The collateral source rule was explained by the Oklahoma Court of Civil Appeals as follows:

> When an injured person receives payment for injuries from a source not connected with the tortfeasor, the tortfeasor is still liable for the full statutory amount, whatever that is determined to be. Payment to the injured party by an independent source does not operate to reduce or mitigate the amount for which the tortfeasor is liable. This is the collateral source rule.

*Weatherly v. Flournoy*, 929 P.2d 296, 299 (Okla. Civ. App. 1996); *see also Woodrich v. Farmers Ins. Co., Inc.*, 405 F. Supp. 2d 1276, 1279 (N.D. Okla. 2004) (applying Oklahoma law) ("One rationale underlying the collateral source rule is that a wrongdoer should not profit from an injured parties' insurance contract."). Based on this principle, "[t]here is no 'double recovery' when an injured person recoups payments pursuant to the contract with his insurance company and is also awarded a judgment for damages from the tortfeasor." *Weatherly*, 929 P.2d at 300. Therefore, Plaintiffs may recover damages from Elliot notwithstanding payments made to them by their insured.[2]

---

[2] In this case, Plaintiffs and their insurer have reached some agreement regarding the insurer's subrogation interest in the negligence claim. (*See* Ben Kimbro Dep., Ex. 6 to Pl.'s Resp. to Def.'s Mot. for Summ. J., at 57-58.) However, this is entirely irrelevant to the amount

5

      2.      <u>Real Party in Interest</u>

Federal Rule of Civil Procedure 17(a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." Federal courts look to "that portion of state law from which the specific right being sued upon stems" in order to determine the real party in interest. *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 (10th Cir. 1985) (examining Kansas law to determine real party in interest to a fraudulent misrepresentation claim).

Under Oklahoma law, a tort victim who has obtained a partial recovery from his insurance company for property damage may seek recovery of the entire amount of loss in his own name. *Smith v. Yoho*, 324 P.2d 531, 533 (Okla. 1958) ("Where an insurance company pays to an insured a loss occasioned by the wrongful act of a third party, and the value of the damage to the property exceeds the amount paid by the insurance company, the insured may bring an action in his own name against the wrongdoer for the full amount of the loss to the property."); *Weatherly,* 929 P.2d at 300 ("[T]he case against the tortfeasor may be prosecuted in the name of the insured when both the insured and his subrogated insurer may share in the recovery.") (explaining that "[i]t is only when the insurer pays the insured's entire loss . . . that the insurer becomes the real party in interest"); *Patton v. Jenkins*, 847 P.2d 831, 832 (Okla. Civ. App. 1993) (same). Here, Plaintiffs have presented evidence that they paid a $2000 deductible for at least one claim, such that they have received only a partial recovery of their loss. *See Riesinger's Jewelers, Inc. v. Roberson*, 582 P.2d

---

of damages Plaintiffs may recover from Elliot. *See Weatherly*, 929 P.2d at 300 ("It makes little difference to the tortfeasor who receives the judgment. Nor does it concern the tortfeasor that the insurer transfers its subrogation interest after the judgment is rendered, or before judgment by way of waiver or assignment.").

409, 411-12 (Okla. Civ. App. 1978) (rejecting argument that insurer had covered entire loss and was therefore the real party in interest where the plaintiff had paid $1,000 deductible prior to recovering the remaining property value from insurer). Therefore, Plaintiffs are entitled to pursue the negligence claim in their own name and for their entire amount of loss.

### 3. Plaintiffs' Motion in Limine (Doc. 33)

For the same reasons explained *supra* Parts II.B.1 & 2 and based on Elliot's confession of such motion, Plaintiffs' motion in limine is granted in its entirety. During trial, Elliot shall not reference Plaintiffs' receipt of insurance proceeds or imply that Plaintiffs are not the real parties in interest to any claim for relief.

**C.   Fraud**

Elliot argues that this claim fails because Oklahoma law requires an actual misrepresentation, and, alternatively, that Plaintiffs' evidence is insufficient to establish any fraudulent behavior by Elliot employees. As this Court has already held, a verbal misrepresentation by Elliot employees to Mrs. Kimbro is not required under Oklahoma law. *See Kimbro v. Davis H. Elliot Co., Inc.,* No. 13-CV-208, 2013 WL 4500878, at * 2-3 (N.D. Okla. Aug. 21, 2013) (denying motion to dismiss fraud claim) (citing *Croslin v. Enerlex*, Inc., 308 P.3d 1041, 1045 (Okla. 2013) ("This Court has often said that fraud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another *by false suggestion or suppression of the truth.* When fraud is alleged, every fact or circumstance from which a legal inference of fraud may be drawn is admissible. Actual fraud is the intentional misrepresentation *or concealment* of a material fact, *with an intent to deceive*, which substantially affects another person . . . .") (emphasis added)).

The Court also rejects Elliot's second argument regarding the sufficiency of the summary judgment evidence. In an Electrical/Mechanical Inspection prepared by Dave Hallman on March 16, 2012, Mr. Hallman stated:

> Examination reconfirmed an improper neutral grounding system within the new electrical panel installed by Davis Elliot Electric. While at the fire scene, Mr. Jody Cooper discovered the original electrical panel cover in the garage. There was evidence of arcing and shorting within the panel cover, revealing evidence to support an event occurred during the conversion of the electric service provided by Davis Elliot. It is my opinion the event prompted the changing out of electric panels within the residence.

(Pls.' Resp. to Mot. for Summ. J., Ex. 7.) This circumstantial evidence could show that Elliot employees were aware that they were leaving the house in an unsafe condition, failed to inform Plaintiffs, and took actions aimed at preventing Plaintiffs from detecting their knowingly negligent work. If proven, this could be viewed by a jury as a "concealment of a material fact, with an intent to deceive, which substantially affect[ed]" Plaintiffs. *See Croslin*, 308 P.3d at 1045.[3]

## III. Conclusion

Defendant's Motion for Summary Judgment (Doc. 27) is DENIED. Plaintiffs' motion in limine (Doc. 33) is GRANTED.

SO ORDERED this 8th day of May, 2014.

*Terence Kern*
**TERENCE KERN**
**United States District Judge**

---

[3] The Court does not share Elliot's concerns about converting every ordinary negligence case into an intentional tort. Presumably, it is a rare occurrence that a service professional is fully aware that he has performed negligent work and even more rare that he takes steps to conceal the problem prior to leaving the house. Further, even assuming this does happen, Plaintiffs will rarely be able to muster evidence in support of such a theory. However, in this somewhat unique case, Plaintiffs have gathered circumstantial evidence, and supporting expert testimony, that could lead a jury to believe fraud occurred in conjunction with the negligence.